**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:25-cr-67 |
| | : | |
| Plaintiff-Appellee, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| BEM D. ITIAVKASE, | : | |
| | : | |
| Defendant-Appellant. | : | |

## ORDER AND OPINION

Following a bench trial, United States Magistrate Judge Karen Litkovitz found Defendant-Appellant Bem D. Itiavkase ("Defendant") guilty of disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11). (Judgment, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 15, Pg. ID 12.) This matter is before the Court on Defendant's appeal of his conviction. (*See* Appeal Notice, Doc. 1.) Defendant filed several briefs in support of his appeal (Docs. 1, 5, 11, 14), and the Government filed a Response (Doc. 12). This appeal is now ripe for the Court's review. For the following reasons, the Magistrate Judge's verdict is **AFFIRMED**.

## BACKGROUND

On December 16, 2024, Defendant was a patient at the Cincinnati VA Medical Center. (Transcript, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 21, Pg. ID 44–45, 78.) One of Defendant's nurses, Chinonso Ezenagu, testified that when he visited Defendant's room that evening, Defendant demanded narcotic pain medications. (*Id.* at Pg. ID 45, 67.)

After this request, Ezenagu explained to Defendant that he could not provide such medications, as Defendant's physician had not prescribed them. (*Id.* at Pg. ID 45.) Ezenagu then left Defendant's room and went to talk with the assistant nurse manager, Maria Wynn. (*Id.* at 47.)

Ezenagu and Wynn testified that as Ezenagu left Defendant's room and proceeded down the hospital corridor, Defendant also exited his room and began walking past the rooms of other patients. (Transcript, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 21, Pg. ID 47, 79–80.) Defendant was loud and disruptive as he proceeded down the hallway, and Ezenagu attempted to calm him. (*Id.* at Pg. ID 80–81.) Defendant pointed his finger at Ezenagu and told him that he had five minutes to provide him with pain medication— Ezenagu interpreted this as a threat. (*Id.* at Pg. ID 47, 80.) Ezenagu also testified that this event made him fearful and interrupted him from being able to care for other patients. (*Id.* at Pg. ID 47–48.) Wynn also testified that Defendant's behavior disrupted her work and kept her from assisting the other nurses she was supervising. (*Id.* at Pg. ID 81.) At that point, Wynn called the VA police, explaining that "no one was going to make a difference with him." (Transcript, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 21, Pg. ID 48–49, 81–82.) The police responded and issued Defendant a citation. (*Id.* at Pg. ID 94–94; Citation, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 1, Pg. ID 1.)

This case proceeded to a bench trial before Magistrate Judge Karen Litkovitz on July 9, 2025. (7/9/2025 Minute Entry, *United States v. Itiavkase*, No. 1:25-PO-8.) During the bench trial, one factual discrepancy arose—Ezenagu testified that the events culminating

in Defendant's disruptive behavior began at around 8:00 p.m. on the evening of December 16, 2024, while Wynn testified that the hallway disruption occurred at around 10:00 p.m. (Transcript, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 21, Pg. ID 53, 79.) But, Ezenagu explained that he was uncertain when he went to speak with Wynn, as he had been in Defendant's room for a long time. (*Id.* at Pg. ID 53.) With all of the evidence in mind, and acknowledging the discrepancy between Ezenagu and Wynn's testimony as to the timing of the events, Magistrate Judge Litkovitz found the Defendant guilty of engaging in disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11). (*Id.* at Pg. ID 103–05; Final Judgment, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 15, Pg. ID 12.) Magistrate Judge Litkovitz then imposed a penalty, ordering Defendant to pay a fine of $100, along with $30 in court costs and a $5 special assessment. (Transcript, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 21, Pg. ID 109; Final Judgment, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 15, Pg. ID 12.) The next day, on July 10, 2025, Defendant filed a notice of appeal. (Notice of Appeal, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 23.)

## LAW & ANALYSIS

A defendant who appeals from a magistrate judge's judgment of conviction on a petty offense "is not entitled to a trial de novo by a district judge," and the scope of such an appeal is "the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Defendant makes three arguments on appeal — each fails to persuade.

### I.     Admission of Ezenagu and Wynn Testimony

Defendant first contends that the Magistrate Judge erred in admitting the testimony of Ezenagu and Wynn, as there were discrepancies between the two witnesses' testimony as to the timing of the incident in question, and "the witnesses were being less than truthful in their testimonies." (Initial Brief, Doc. 11, Pg. ID 33–34.) Evidentiary decisions like these are generally reviewed for abuse of discretion, but where a party does not object to the admission of evidence at trial, a plain error standard applies. *United States v. Ricks*, No. 15-4040/4139, 2016 U.S. App. LEXIS 24409, at *4 (6th Cir. Oct. 31, 2016); *United States v. Underwood*, 859 F.3d 386, 394 (6th Cir. 2017) ("When a party does not object to a witness's testimony, we review the district court's admission of that testimony for plain error."). "To show plain error, a defendant must show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

Credibility is generally an issue of weight, and not admissibility. *See Breedlove v. United States*, 816 F. Supp. 3d 800, 817 (M.D. Tenn. 2026) (noting that "[w]hether [witnesses'] testimony was 'false' is a credibility issue, not an admissibility issue," and pointing out that such issues should be explored on cross-examination); *see also* Fed. R. Evid. 611(b) ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the *witness's credibility*.") (emphasis added). Thus, while the discrepancies and alleged dishonesty identified by Defendant could be, and in

4

fact were, explored on cross-examination, these issues do not render the testimony of the witnesses inadmissible. Accordingly, Defendant fails to demonstrate that the Magistrate Judge committed plain error in admitting the testimony of Ezenagu and Wynn.

## II.    Sufficiency of the Evidence

Defendant next argues that the evidence presented during the bench trial was insufficient to sustain the Magistrate Judge's guilty verdict. (Initial Brief, Doc. 11, Pg. ID 31, 35–36; Reply Brief, Doc. 14, Pg. ID 143–44.) Challenges to the sufficiency of the evidence are reviewed de novo. *United States v. Woods*, 14 F.4th 544, 551 (6th Cir. 2021). "A defendant mounting a sufficiency challenge bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986). "A conviction will be upheld where the evidence, viewed in the light most favorable to the government, supports the . . . verdict." *United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020) (cleaned up). But, the Court "can neither independently weigh the evidence, nor make [its] own assessment of the credibility of the witnesses who testified at trial." *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014).

At the bench trial, the Government was required to prove that Defendant engaged in "conduct which create[d] loud, boisterous, and unusual noise, or which obstruct[ed] the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tend[ed] to impede or prevent the normal operation of a service or operation of the facility." 38 C.F.R. § 1.218(b)(11). As the Sixth Circuit has noted, "the controlling standard of conduct is reasonably clear: if the conduct would tend to disturb the routine

5

operations of a VA hospital, such conduct is prohibited." *United States v. Williams*, 892 F.2d 1044 (6th Cir. 1990). During the bench trial, Wynn testified that Defendant was loud and disruptive as he proceeded down the hospital corridor, and Ezenagu testified that Defendant's threats and demands for narcotics made him fearful. (Transcript, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 21, Pg. ID 47–48, 62, 80–81.) Both Ezenagu and Wynn testified that Defendant's conduct disrupted their work—Ezenagu stated that the incident prevented him from being able to care for other patients, and Wynn testified that it kept her from assisting the other nurses she was supervising. (*Id.* at Pg. ID 47–48, 81.) This evidence, viewed in the light most favorable to the Government, is sufficient to demonstrate that Defendant interrupted the routine operations of the VA hospital; it shows that Defendant engaged in loud and disruptive behavior, and that his conduct impeded the ability of Ezenagu and Wynn to perform their official duties. *See United States v. Puch*, No. 20-3265, 2021 WL 867038, at *4 (6th Cir. Jan. 21, 2021) ("Although the evidence was not overwhelming, we conclude that it was sufficient for the magistrate judge to convict [the defendant] of disorderly conduct because he disrupted or impeded [a VA nurse practitioner's] ability to perform her official duties."); *United States v. Rizzo*, No. 1:14-CR-124, 2015 WL 1475114, at *3 (S.D. Ohio Mar. 31, 2015) (affirming disorderly conduct conviction where the defendant "created boisterous and unusual noise which disturbed the normal operation of the VA Medical Center"). Accordingly, the evidence was sufficient for the Magistrate Judge to convict Defendant of disorderly conduct.

Defendant argues that the Magistrate Judge erred in accepting the testimony of Ezenagu and Wynn due to their conflicting testimony as to the timing of the incident. (Brief, Doc. 12, Pg. ID 33–34.) But, as noted above, the Court cannot assess the credibility of the witnesses in adjudicating this appeal. Defendant also argues that the evidence fails to demonstrate that he acted with the requisite intent. (*Id.* at Pg. ID 35.) While the Sixth Circuit has not articulated the applicable mens rea for disorderly conduct, all courts that have addressed the issue have found that disorderly conduct is a general intent crime. *See United States v. Krahenbuhl*, No. 1:21-CR-127, 2022 WL 17496053, at *7 (E.D. Wis. Dec. 8, 2022), *aff'd*, 88 F.4th 678 (7th Cir. 2023) (collecting cases). "[A] general intent crime requires the knowing commission of an act that the law makes a crime," while "[a] specific intent crime requires additional 'bad purpose.'" *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001) (citing *United States v. Kleinbart*, 27 F.3d 586, 592 n.4 (D.C. Cir. 1994)). General intent is thus demonstrated by "showing that the defendant knew his actions would produce the prohibited result, or recklessly disregarded a known risk that they would do so." *United States v. Calloway*, 116 F.3d 1129, 1135 (6th Cir. 1997).

To the extent Defendant argues that the applicable mens rea was specific intent, the Court finds this argument both undeveloped and unpersuasive. And, to the extent Defendant argues that the Government failed to produce evidence sufficient to support a finding of general intent, the Court observes that "general intent may be inferred from the doing of the act." *Kimes*, 246 F.3d at 807. As noted above, the evidence presented at the bench trial, viewed in the light most favorable to the Government, is sufficient to

7

demonstrate that Defendant engaged in loud and boisterous behavior and interrupted the routine operations of the VA hospital. Because Defendant's general intent to engage in these acts is inferred from the doing of the acts, and the Court has already found the evidence sufficient to support a finding that the acts were indeed committed by Defendant, the Court finds that the evidence was sufficient to demonstrate Defendant's general intent.

### III.    Inability to Present Evidence

Finally, Defendant contends that the U.S. Marshals who brought him to the bench trial improperly handcuffed him and confiscated his belongings, restricting his ability to defend himself and present evidence. (Initial Brief, Doc. 11, Pg. ID 29–30.) This argument falls flat for two reasons. First, Defendant fails to develop this argument in his briefing, so the argument is forfeited. *See United States v. McShan*, 757 F. App'x 454, 458 n.1 (6th Cir. 2018) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (noting that "'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation' are forfeited"); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (cleaned up). And, second, the record tells a different story. Before the presentation of evidence began, Defendant requested that his handcuffs be removed, and the Magistrate Judge granted that request. (Transcript, *United States v. Itiavkase*, No. 1:25-PO-8, Doc. 21, Pg. ID 39–40.) At the conclusion of the Government's case, when the Magistrate Judge asked Defendant if he

wished to present evidence on his own behalf, Defendant stated that he had "no evidence," rested his case, and proceeded to closing arguments. (*Id.* at Pg. ID 63.) The Court thus finds that Defendant's contention here lacks merit.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. To the extent Defendant's Motion to Introduce Evidence (Doc. 11) seeks to effectuate the filing of the brief attached to the Motion, the Motion to Introduce Evidence (Doc. 11) is **GRANTED**, and the Court has considered the arguments made in the brief attached to that Motion;

2. Defendant's Motion to Change Sentence to Not Guilty (Doc. 5) is **DENIED**;

3. The Magistrate Judge's verdict is **AFFIRMED**; and

4. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

9